IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT SINGLETON and JOCELYN WILSON, Administrators of the Estate of ALIVIA SINGLETON, deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>PHARMATECH, LLC; THE HARVARD DRUG GROUP, LLC d/b/a RUGBY LABORATORIES; and BAYSHORE PHARMACEUTICALS, LLC,<br><br>    Defendants.<br><br>v.<br><br>FLORIDA ULTRAPURE WATER, LLC d/b/a ALL FLORIDA WATER, INC.; and BRUCHEM, INC.,<br><br>    Third Party Defendants. | Civil Action No. 17-921<br>Judge Nora Barry Fischer |

## MEMORANDUM ORDER

This case arises out the injuries and death of Alivia Singleton (A.S.), whose death was purportedly caused by her receiving liquid docusate sodium stool softener that was contaminated with Burkholderia cepacia (hereinafter "B. cepacia"). (Docket No. 35 ¶¶ 1, 5). In their Second Amended Complaint, Plaintiffs Lamont Singleton and Jocelyn Wilson, Administrators of the Estate of Alivia Singleton, allege that Defendants PharmaTech, LLC ("PharmaTech"), Bayshore Pharmaceuticals, and The Harvard Drug Group, LLC d/b/a Rugby Laboratories ("Harvard Drug") are liable for A.S.'s injuries and death on the basis of the following product liability theories: negligence, strict liability, and breach of warranty. (Docket No. 35). In accordance with FED. R. CIV. P. 14(a), Harvard Drug then filed their Third Party Amended Complaint against Bruchem,

Inc. ("Bruchem") for negligence/ contribution, common law indemnity, and strict liability. (Docket No. 199). Presently before the Court is Bruchem's FED. R. CIV. P. 12(b)(6) motion to dismiss (Docket No. 217), its brief in support thereof (Docket No. 218), and Harvard Drug's Response in Opposition (Docket No. 235). After careful consideration of the parties' arguments, and for the reasons essentially stated in Harvard Drug's Response in Opposition (Docket No. 235),[1]

(1) Bruchem's Motion [217] is denied without prejudice to renewal on summary judgment; and

(2) Bruchem shall file an answer on or before **August 16, 2019.**

As the Court writes primarily for the parties, it dispenses with a lengthy recitation of the facts and only briefly references the well-established standard governing motions to dismiss under Rule 12(b)(6), which is set forth more fully in other decisions by this Court. *See e.g., Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, Civ. Act. No. 18-1418, 2019 WL 1978429, at *4 (W.D. Pa. May 3, 2019). To this end, when reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations [in the complaint] as true, [and] construe the complaint in the light most favorable to the plaintiff." *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); however, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face," *see Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

In this Court's estimation, Harvard Drug has stated a plausible claim for relief against Bruchem for negligence/ contribution, common law indemnity, and strict liability. The Court reaches these conclusions for several reasons.

---

[1] Harvard Drug's analysis is incorporated-by-reference herein. (Docket No. 235).

Harvard Drug's First Amended Complaint pleads the following facts:

- PharmaTech contracted with Bruchem to supply the API and/or other ingredients used in the manufacture of PharmaTech's Diocto Liquid (Docket No. 199 ¶ 14).

- Bruchem was a significant and/or exclusive supplier of API and/or other ingredients to PharmaTech for PharmaTech's Diocto Liquid (*id.* ¶ 15).

- API and/or other ingredients supplied by Bruchem to PharmaTech were contaminated with B. cepacia (*id.* ¶ 20).

- The only pharmaceutical products manufactured by PharmaTech found to be contaminated with B. cepacia were manufactured using Bruchem's defective API and/or other ingredients (*id.* ¶ 23).

- The FDA has not tested the particular bottle(s) of Diocto Liquid allegedly administered to the deceased or issued a final report conclusively identifying the source of B. cepacia for any of the bottles FDA tested (*id.* ¶ 18).

- Bruchem's defective API and/or other ingredients were sold to another manufacturer in 2017 and that manufacturer subsequently experienced a B. cepacia outbreak in its facility and products (*id.* ¶¶ 25-26).

- The API and/or other ingredients supplied by Bruchem to PharmaTech for manufacture of Diocto Liquid reached the decedent without substantial change in their condition in which they were sold to PharmaTech (*id.* ¶ 22).

Having assumed these well-pleaded facts are true, Harvard Drug's allegations are sufficient to survive a FED. R. CIV. P. 12(b)(6) motion to dismiss on each of its third-party claims against Bruchem. *See, e.g., EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp.3d 486, 493 (W.D. Pa. 2016) (delineating the law as to common law indemnity); *Hook v. Whiting Door Mfg. Corp.*, 2019 WL 630324, at *12-13 (W.D. Pa. Feb. 14, 2019) (setting forth the standard for product liability negligence/ contribution claims); *Bernard v. AirVent, Inc.*, Civ. Act. No. 17-2361, 2019 WL 144852, at *4 (M.D. Pa. Jan. 9, 2019) (explaining the standard for strict-liability). Bruchem's argument that Harvard Drug is unable to prove its third-party claims is better suited for a motion

for summary judgment once the parties have had the benefit of discovery.[2]  Accordingly, Bruchem may renew any and all defenses it raised in the instant motion at summary judgment.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior United States District Judge

Dated: August 2, 2019

---

[2] It bears mentioning that Bruchem failed to respond to a subpoena from this Court dated December 10, 2018. (Docket Nos. 235; 235-1).